CENTER FOR DISABILITY ACCESS
Chris Carson, Esq., SBN 280048
Raymond Ballister Jr., Esq., SBN 111282
Phyl Grace, Esq., SBN 171771
Dennis Price, Esq., SBN 279082
Christopher A. Seabock, Esq., SBN 279640
Mail: PO Box 262490
San Diego, CA 92196-2490
Delivery: 9845 Erma Road, Suite 300
San Diego, CA 92131
(858) 375-7385; (888) 422-5191 fax
phylg@potterhandy.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Shonna Counter**,<br><br>     Plaintiff,<br><br>v.<br><br>**Enterprise Rent-A-Car Company of Los Angeles, LLC,** a Delaware Limited Liability Company; and Does 1-10,<br><br>     Defendants. | **Case No**. 2:18-cv-10290-GW-AGR<br><br>**First Amended Complaint For Damages And Injunctive Relief For Violations Of:** American's With Disabilities Act; Unruh Civil Rights Act |

Plaintiff Shonna Counter complains of Enterprise Rent-A-Car Company of Los Angeles, LLC, a Delaware Limited Liability Company; and Does 1-10 ("Defendants"), and alleges as follows:

**PARTIES:**

1. Plaintiff is a California resident with physical disabilities. She suffers from spinal muscular atrophy. Plaintiff drives a van that has a handicap placard issued by the state of California. She uses both a walker and wheelchair for

mobility.

2. Defendant Enterprise Rent-A-Car Company of Los Angeles, LLC owned the Enterprise Rent-A-Car located at or about 1435 S. La Cienega, Los Angeles, California, in April 2018.

3. Defendant Enterprise Rent-A-Car Company of Los Angeles, LLC owned the Enterprise Rent-A-Car located at or about 1435 S. La Cienega, Los Angeles, California, in May 2018.

4. Defendant Enterprise Rent-A-Car Company of Los Angeles, LLC owned the Enterprise Rent-A-Car located at or about 1435 S. La Cienega, Los Angeles, California, in June 2018.

5. Defendant Enterprise Rent-A-Car Company of Los Angeles, LLC owned the Enterprise Rent-A-Car located at or about 1435 S. La Cienega, Los Angeles, California, in August 2018.

6. Defendant Enterprise Rent-A-Car Company of Los Angeles, LLC owned the Enterprise Rent-A-Car located at or about 1435 S. La Cienega, Los Angeles, California, in September 2018.

7. Defendant Enterprise Rent-A-Car Company of Los Angeles, LLC owned the Enterprise Rent-A-Car located at or about 1435 S. La Cienega, Los Angeles, California, in October 2018.

8. Defendant Enterprise Rent-A-Car Company of Los Angeles, LLC owns the Enterprise Rent-A-Car ("Enterprise") located at or about 1435 S. La Cienega, Los Angeles, California, currently.

9. Plaintiff does not know the true names of Defendants, their business capacities, their ownership connection to the property and business, or their relative responsibilities in causing the access violations herein complained of, and alleges a joint venture and common enterprise by all such Defendants. Plaintiff is informed and believes that each of the Defendants herein, including Does 1 through 10, inclusive, is responsible in some capacity for the

events herein alleged, or is a necessary party for obtaining appropriate relief. Plaintiff will seek leave to amend when the true names, capacities, connections, and responsibilities of the Defendants and Does 1 through 10, inclusive, are ascertained.

**JURISDICTION & VENUE:**

10. The Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1331 and § 1343(a)(3) & (a)(4) for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq.

11. Pursuant to supplemental jurisdiction, an attendant and related cause of action, arising from the same nucleus of operative facts and arising out of the same transactions, is also brought under California's Unruh Civil Rights Act, which act expressly incorporates the Americans with Disabilities Act.

12. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) and is founded on the fact that the real property which is the subject of this action is located in this district and that Plaintiff's cause of action arose in this district.

**FACTUAL ALLEGATIONS:**

13. Plaintiff went to Enterprise at least a dozen times during 2018. Plaintiff most recently went to Enterprise in October 2018. In February 2018, plaintiff's vehicle was totaled in a car accident. Thereafter, plaintiff had a need and desire to rent vehicles from Enterprise.

14. Enterprise is a facility open to the public, a place of public accommodation, and a business establishment.

15. Parking spaces are one of the facilities, privileges, and advantages offered by Defendants to patrons of Enterprise.

16. Unfortunately, even though the defendants have parking spaces marked and reserved for persons with disabilities, the defendants park rental inventory

in the parking spaces. The defendants park rental inventory in these spaces on a regular and consistent basis.

17. The defendants have absolutely no policy of prohibiting employees from using the parking spaces marked and reserved for persons with disabilities for rental inventory vehicles.

18. The plaintiff has complained, on a number of occasions, to employees. During one visit, plaintiff complained to an employee out in the parking lot that the parking spaces were being used by Enterprise to store rental inventory. The employee said that he could move the vehicles out of the parking spaces if plaintiff needed to use them. Plaintiff told the employee that the parking spaces were supposed to be available when she arrives – not upon request after she has already arrived. When plaintiff asked for the employee's name, the employee refused to give her his name.

19. Plaintiff, after managing to squeeze by the rental cars parked in the parking spaces and access aisle reserved for persons with disabilities, went inside the Enterprise to get a manager, so that plaintiff could discuss the parking situation, and to get the name of the employee who would not provide his name outside in the parking lot.

20. The employee who would not provide his name, opened the door and urged his fellow employees to not provide his name to the plaintiff. Not only did the employees inside refuse to give up their co-worker's name, none of the employees inside would get a manager.

21. Upset, the plaintiff called customer service (using the toll-free number) and explained the situation to a customer-service representative. After listening to plaintiff's concerns and experience, the customer-service representative assured plaintiff that a district manager from Enterprise would call plaintiff back. Alas, no district manager ever called the plaintiff back.

22. To this day, the defendants still use the parking spaces for rental

3

inventory. In December 2018, plaintiff's investigator went to this Enterprise location on two different occasions and observed rental inventory located in the parking spaces marked and reserved for persons with disabilities. None of the cars had ADA placards or license plates that indicated the parking spaces were in use by other persons with disabilities.

23. Subsequently, Plaintiff became aware of Defendants' claim to have implemented policies and procedures prohibiting employees from parking vehicles in the spaces reserved for persons with disabilities.

24. On or about March 13, 2019, Plaintiff returned to Enterprise to see for herself whether Defendants were still parking vehicles in spaces reserved for persons with disabilities.

25. Despite Defendants' claim, Plaintiff saw a vehicle parked across the stall and access aisle of a space reserved for persons with disabilities.

26. Plaintiff took a photograph of the vehicle parked across the parking space reserved for persons with disabilities.

27. One of Defendants' employees saw Plaintiff taking a photograph.

28. The employee approached Plaintiff.

29. The employee screamed obscenities at Plaintiff.

30. When Plaintiff tried to leave the premises, the employee chased Plaintiff.

31. The conduct of Defendants' employee was intentional.

32. The conduct of Defendants' employee was morally offensive.

33. Plaintiff is frustrated because Enterprise is so conveniently located. Plaintiff is very regularly in the area of Enterprise. Because of the parking situation at Enterprise, though, plaintiff now reluctantly uses another Enterprise Rent-A-Car that is not conveniently located.

34. Garry Kann, Plaintiff's approved In-Home Supportive Services provider, rented a vehicle on behalf of Plaintiff from another, less convenient Enterprise

location on at least four times in 2018 and once in 2019.

35. Plaintiff would love to go to this Enterprise location but she does not want to contend with the parking issues any longer. When the defendants remove the barriers, however, plaintiff intends to return to this Enterprise, especially because it is so conveniently located.

36. Defendants have failed to maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities at the Subject Property.

37. Plaintiff personally encountered these barriers.

38. This inaccessible facility denied the plaintiff full and equal access and caused her difficulty, discomfort, and embarrassment.

39. Plaintiff will return to Enterprise to avail herself of its goods or services once the barriers are permanently removed. In fact, Enterprise would be Plaintiff's first choice to rent a vehicle were the barriers removed. If the barriers are not removed, the plaintiff will face unlawful and discriminatory barriers again.

40. The defendants have failed to maintain in working and useable conditions those features required to provide ready access to persons with disabilities.

41. The barriers identified above are easily removed without much difficulty or expense. They are the types of barriers identified by the Department of Justice as presumably readily achievable to remove and, in fact, these barriers are readily achievable to remove.

42. Given the obvious and blatant nature of the barriers and violations alleged herein, the plaintiff alleges, on information and belief, that there are other violations and barriers on the site that relate to her disability. Plaintiff will amend the complaint, to provide proper notice regarding the scope of this lawsuit, once she conducts a site inspection. However, please be on notice that

the plaintiff seeks to have all barriers related to her disability remedied. See *Doran v. 7-11*, 524 F.3d 1034 (9th Cir. 2008) (holding that once a plaintiff encounters one barrier at a site, she can sue to have all barriers that relate to her disability removed regardless of whether she personally encountered them).

**I. FIRST CAUSE OF ACTION: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990** (On behalf of Plaintiff and against all Defendants.) (42 U.S.C. section 12101, et seq.)

43. Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

44. Under the ADA, it is an act of discrimination to fail to ensure that the privileges, advantages, accommodations, facilities, goods and services of any place of public accommodation is offered on a full and equal basis by anyone who owns, leases, or operates a place of public accommodation. See 42 U.S.C. § 12182(a). Discrimination is defined, inter alia, as follows:

   a. A failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the accommodation would work a fundamental alteration of those services and facilities. 42 U.S.C. § 12182(b)(2)(A)(ii).
   b. A failure to remove architectural barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). Barriers are defined by reference to the ADAAG, found at 28 C.F.R., Part 36, Appendix "D."
   c. A failure to make alterations in such a manner that, to the

maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs or to ensure that, to the maximum extent feasible, the path of travel to the altered area and the bathrooms, telephones, and drinking fountains serving the altered area, are readily accessible to and usable by individuals with disabilities. 42 U.S.C. § 12183(a)(2).

45. Any business that provides parking spaces must provide accessible parking spaces. 2010 Standards § 208. Under the 2010 Standards, one in every six accessible parking spaces must be van accessible. 2010 Standards § 208.2.4.

46. Here, even though Enterprise does have parking spaces marked and reserved for persons with disabilities, the defendants use the parking spaces to park Enterprise rental inventory in the spaces. This is a violation of the law.

47. A public accommodation must maintain in operable working condition those features of its facilities and equipment that are required to be readily accessible to and usable by persons with disabilities. 28 C.F.R. § 36.211(a).

48. Here, the failure to ensure that the accessible facilities were available and ready to be used by the plaintiff is a violation of the law.

49. Given its location and options, plaintiff will continue to desire to patronize Enterprise but she has been and will continue to be discriminated against due to the lack of accessible facilities and, therefore, seeks injunctive relief to remove the barriers.

**II. SECOND CAUSE OF ACTION: VIOLATION OF THE UNRUH CIVIL RIGHTS ACT** (On behalf of Plaintiff and against all Defendants.) (Cal. Civ. Code § 51-53.)

50. Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint. The Unruh Civil Rights Act ("Unruh Act") guarantees, inter alia, that persons with disabilities are entitled to full and equal accommodations, advantages, facilities, privileges, or services in all business establishment of every kind whatsoever within the jurisdiction of the State of California. Cal. Civ. Code §51(b).

51. The Unruh Act provides that a violation of the ADA is a violation of the Unruh Act. Cal. Civ. Code, § 51(f).

52. Defendants' acts and omissions, as herein alleged, have violated the Unruh Act by, inter alia, denying, or aiding, or inciting the denial of, Plaintiff's rights to full and equal use of the accommodations, advantages, facilities, privileges, or services offered.

53. Because the violation of the Unruh Civil Rights Act resulted in difficulty, discomfort or embarrassment for the plaintiff, the defendants are also each responsible for statutory damages, i.e., a civil penalty. (Civ. Code § 55.56(a)-(c).)

54. Because Defendants' actions were intentionally and morally offensive, the defendants are also each responsible for actual damages and any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damage, i.e., punitive damages. (Civ. Code § 51.5; 52(a); Botosan v. Fitzhugh 13 F.Supp.2d 1047 (S.D. Cal. 1998), citing Harris v. Capital Growth Investors XIV 52 Cal.3d 1142, 1172, superseded by statute as stated in Munson v. Del Taco, Inc. 46 Cal.4th 661.

**PRAYER**:

Wherefore, Plaintiff prays that this Court award damages and provide relief as follows:

1. For injunctive relief, compelling Defendants to comply with the Americans with Disabilities Act and the Unruh Civil Rights Act. Note: the plaintiff is not invoking section 55 of the California Civil Code and is not seeking injunctive relief under the Disabled Persons Act at all.

2. Damages under the Unruh Civil Rights Act, which provides for actual damages, any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the actual damages, and a statutory minimum of $4,000 per occasion.

3. Reasonable attorney fees, litigation expenses and costs of suit, pursuant to 42 U.S.C. § 12205; and Cal. Civ. Code §§ 52.

Dated: April 23, 2019        CENTER FOR DISABILITY ACCESS

By: /s/ Christopher A. Seabock

Christopher A. Seabock
Attorney for plaintiff