UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-10290-GW(AGRx) | | Date | July 1, 2019 |
|---|---|---|---|---|
| Title | *Shonna Counter v. Enterprise Rent-A-Car Company of Los Angeles, LLC, et al.* | | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | | |
|---|---|---|---|
| Javier Gonzalez | | Katie E. Thibodeaux | |
| Deputy Clerk | | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: | |
| Raymond G. Ballister, Jr. | | Minh N. Vu | |

**PROCEEDINGS:** DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FRCP 12(B)(1) [23]

Court and counsel confer. The Tentative circulated and attached hereto, is adopted as the Court's Final Ruling. Defendant's Motion is DENIED.

The Court refers the parties to the Honorable Alicia G. Rosenberg, U.S. Magistrate Judge, for settlement purposes. A post mediation status conference is set for September 5, 2019 at 8:30 a.m. Parties may mediate up to and including September 3, 2019.

Any discovery will be provided to this Court for review if necessary.

|  | : | 11 |
|---|---|---|
| | Initials of Preparer | JG |

<u>Counter v. Enterprise Rent-A-Car Company, LLC</u>; Case No. 2:18-cv-10290-GW-(AGRx)
Tentative Ruling on Motion to Dismiss the First Amended Complaint

## I. Background

### A. <u>Factual Background</u>

Plaintiff Shonna Counter sues Defendant Enterprise Rent-A-Car Company of Los Angeles, LLC ("Enterprise") for: 1) a violation of Title III of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, and 2) a violation of the California Unruh Civil Rights Act, Cal. Civ. Code §§ 51-53. *See generally* First Amended Complaint ("FAC"), Docket No. 21. The thrust of Plaintiff's suit is that Enterprise discriminated against Plaintiff by failing to ensure that one of its locations had sufficiently accessible handicapped parking spots. *Id.* ¶¶ 45-49.

Plaintiff alleges the following: Plaintiff is a California resident with physical disabilities that affect her mobility. *Id.* ¶ 1. She suffers from spinal muscular atrophy and drives a van with a California handicap placard. *Id.* Enterprise has owned a location at 1435 S. La Cienega, Los Angeles, California, since at least April 2018 ("La Cienega location"). *Id.* ¶¶ 2-8. Plaintiff visited the La Cienega location a minimum of a dozen times during 2018 because she "totaled" her own car in February 2018 and had a need and desire to rent vehicles from Enterprise. *Id.* ¶ 13. The La Cienega location has parking spaces reserved for persons with disabilities (referred to as "accessible parking spaces"), but Enterprise would park rental inventory in those spaces. *Id.* ¶ 16.

Plaintiff has complained to Enterprise's employees on a number of occasions that the parking spaces were being used to store rental inventory. *Id.* ¶ 18. In August 2018, an employee responded that he could move the vehicles if Plaintiff needed to use one of the accessible parking spaces. *Id.* Plaintiff informed that employee that the parking spaces were supposed to be available when she arrives – not upon request after she has already arrived. *Id.* ¶ 18. During the same visit, after squeezing by the rental cars parked in the accessible parking spaces, Plaintiff entered the store to speak with a manager and get the employee's name. *Id.* ¶ 19. None of the employees inside would get a manager or give up their co-worker's name. *Id.* ¶ 20. In response, Plaintiff called the customer service line to explain the situation and the customer service representative assured Plaintiff that a district manager would call her back. *Id.* ¶ 21. No district

manager ever called. *Id.*

In December 2018, Enterprise was still using the accessible parking spaces for rental inventory storage. *Id.* ¶ 22. Plaintiff would prefer to use the La Cienega location because of its convenient location, but on account of the parking situation, she now reluctantly uses a different Enterprise store. *Id.* ¶ 33.

On or about March 13, 2019, Plaintiff visited the La Cienega location to see if Enterprise continued to store rental inventory in the accessible parking spaces. *Id.* ¶ 24. When Plaintiff took a photograph of the vehicle parked across the stall and access aisle of an accessible parking space, one Enterprise employee approached Plaintiff and screamed obscenities. *Id.* ¶ 25. The Enterprise employee chased Plaintiff off the premises. *Id.* ¶ 30.

Garry Kann ("Kann"), Plaintiff's approved In-Home Supportive Services provider, rented vehicles on Plaintiff's behalf from a different Enterprise location on at least four occasions in 2018 and once in 2019. *Id.* ¶ 34. Plaintiff wants to return to the La Cienega location once the accessibility barriers are removed. *Id.* ¶ 35.

In support of its challenge to standing and jurisdiction, Enterprise offered the following facts and concomitant evidence: In response to this lawsuit, Enterprise developed a policy that prohibits employees from parking rental vehicles in accessible parking spaces and the access aisles serving those spaces (the "Policy"). *See* Declaration of Kelly DeMarchi, Ex. D to the Motion, Docket No. 23-11, ¶ 5. All employees at the La Cienega location were required to sign a copy of the Policy acknowledging that they understand it and would comply with it. *See* Declaration of Deborah Manson ("Manson Decl.), Ex. E to the Motion, Docket No. 23-12, ¶ 5.[1] To verify that the Policy was being followed, the Branch Rental Manager for the La Cienega location went out to look at the accessible parking spaces on February 11, 13, 14, 18 and on May

---

[1] Plaintiff objects to Exhibit 1 of the Declaration of Deborah Manson to the extent it is offered as evidence of acknowledgement of the policy by employees and thus constitutes impermissible hearsay. *See* Opp'n at 2, 7. In response to the objection, Enterprise argues that Exhibit 1 to the Manson Decl. is admissible because it is evidence to show that "Enterprise La Cienega does have a policy in place and that it provided training to employees on the policy." *See* Reply ISO Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to FRCP 12(B)(1) ("Reply"), Docket No. 28, at 13, n.6. The Court does not think that the fact that Manson provided copies of the Policy to the employees is relevant to whether the employees' responses constitute hearsay. Further, the Court would find that the signed acknowledgements of the Policy do not fall under the business records exception because Enterprise has not established that the records meet the requirements under Federal Rule of Evidence 803(6). As such, the Court would sustain Plaintiff's objection to Exhibit 1 of the Manson Decl. to the extent Enterprise offers it as evidence that the employee's signatures were proof that they acknowledged and adhered to the Policy. Nonetheless, the fact that Enterprise promulgated a policy does not seem to be in dispute, and the Court would overrule the objection to the extent Exhibit 1 is offered for proof of the existence of the Policy.

9 and 10, 2019, observing that they were clear of rental vehicles and any other obstructions. *See* Declaration of Jason Perla ("Perla Decl."), Ex. B to the Motion, Docket No. 23-5, ¶ 7.[2]

Enterprise challenges Plaintiff's allegations that she visited the La Cienega location at least a dozen times and complained about the parking issue. Enterprise reviewed its records and did not find any reservations under the name Shonna Counter or other similar spellings of "Counter." *See* Declaration of Paul McGlynn, Ex. A to the Motion ("McGlynn Decl."), Docket No. 23-2, ¶¶ 5-7. Enterprise also ran a google search for Plaintiff's phone number and ran five possible phone numbers through the company's telephone line records. *Id.* ¶¶ 9-11. There were no matches to the possible phone numbers in the reservation and rental records. *Id.* ¶ 10. Likewise, there were no matches in the customer service line records as of December 27, 2018. *Id.* ¶ 11. The customer service line records are stored for 90 days. *Id.* Enterprise also submits evidence that Kann's car rental reservations were made at another Enterprise location and that the Plaintiff was not listed as a second driver on any of these reservations. *Id.* ¶¶ 12-17.

Enterprise also denies that Plaintiff visited the La Cienega location on March 13, 2019. *See* Motion at 7-9; *see also* Declaration of Jesse Brownbey (Brownbey Decl."), Ex. C to the Motion, Docket No. 23-10, ¶¶ 5-8. On that date, an Enterprise employee witnessed a man taking photos of a vehicle parked in the accessible parking spaces. *See* Brownbey Decl. ¶¶ 5-8. The employee saw this "man drive into the Enterprise La Cienega parking lot, jump out of his black vehicle, and take a photo of a vehicle parked in one of these accessible parking spaces." *Id.* ¶ 5. The employee approached the man who was driving away and asked the man if he had forgotten to take a photo of the disability placard inside the parked vehicle. *Id.* ¶ 7-8. There was no one else with the man in the black vehicle. *Id.*

In Plaintiff's declaration, she states that on March 13, 2019, Kann had driven Plaintiff to the La Cienega location so she could see if there were ongoing parking violations. *See* Declaration of Shonna Counter ("Counter Decl."), Docket No. 27-1, ¶¶ 24-25. Kann took the photograph of the vehicle parked across the accessible parking space. *Id.* ¶ 27. One of

---

[2] Plaintiff also objects to Paragraph 4 of the Perla Decl. that it constitutes as impermissible hearsay. *See* Opp'n at 7; *see also* Perla Decl. ¶ 4. Plaintiff argues that Enterprise merely changed the wording from the prior objected part of the Perla Decl., and that the implied content remains the same that it suggests what employees had reported to Mr. Perla. *See* Opp'n at 7; *see also* Civil Minutes; Defendants' Motion to Dismiss Plaintiff's Complaint Pursuant to FRCP 12(B)(1) ("Tentative Ruling"), Docket No. 15, at 2 n.1. In response, Enterprise argues that Mr. Perla is "simply attesting to his own personal knowledge that he is not aware of any complaints being made." *See* Reply at 13, n.6. The Court would overrule Plaintiff's objection to the extent Enterprise offers it as evidence that Perla is stating that he is not aware of any complaint being made.

3

Enterprise's employees saw Kann taking the photograph, and then approached Plaintiff and screamed at her. *Id.* ¶ 28. The employee then chased Plaintiff and Kann away. *Id.*

Additionally, Kann rented a vehicle on Plaintiff's behalf from a different Enterprise location on at least four occasions in 2018 and once in 2019. *Id.* ¶¶ 13-17; *see also* FAC ¶ 34. Kann reserved these vehicles with his credit card since he is the primary driver. *See* Counter Decl. ¶¶ 11-12. Plaintiff then reimbursed Kann for the expenses informally through "buying his meals and cash." *Id.* Plaintiff needed to rent vehicles to get to events that were more than around 20 miles away or had a certain start time, and were not easy to get to with public transit. *Id.* ¶¶ 6, 9. Since Plaintiff relies primarily on a wheelchair for mobility, she needs an access aisle to transfer out of her wheelchair and into a vehicle that these accessible parking spaces provide. *Id.* ¶¶ 3-4. Every time Plaintiff visited the Enterprise in 2018 she saw the accessible parking space was occupied by Enterprise's rental inventory and took photographs of these illegally parked vehicles. *Id.* ¶ 18.

B. Procedural Background

On December 12, 2018, Plaintiff filed her original complaint asserting violations of the ADA and California Unruh Civil Rights Act. *See generally* Complaint, Docket No.1. Enterprise filed a motion to dismiss the Complaint, arguing that Plaintiff lacked standing to assert her claims. *See generally* Motion to Dismiss Plaintiff's Complaint Pursuant to FRCP 12(B)(1) ("First MTD"), Docket No. 10. Enterprise asserted a factual challenge to Plaintiff's standing. *Id.* at 7. Plaintiff opposed. *See generally* Opposition to Motion, Docket No. 12.

On March 31, 2019, the Court entered a Tentative Ruling on the First MTD, finding that Plaintiff had not met her burden of establishing standing. *See generally* Tentative Ruling. Nevertheless, the Court gave Plaintiff a chance to submit evidence establishing subject matter jurisdiction. *Id.*

The parties stipulated to Plaintiff filing a first amended complaint. *See generally* FAC. Enterprise now moves to dismiss the FAC. *See* Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to FRCP 12(B)(1) ("Motion"), Docket No. 23. Plaintiff opposes and submits her own declaration to rebut Enterprise's evidentiary showing. *See* Plaintiff's Opposition to Defendants' Motion to Dismiss First Amended Complaint ("Opp'n"), Docket No. 27; *see also* Counter Decl. Enterprise filed a Reply. *See* Reply.

## II. Legal Standard

Federal Rule of Civil Procedure ("Rule") 12(b)(1) governs motions to dismiss for lack of subject matter jurisdiction. Challenges to standing and mootness are appropriately considered under Rule 12(b)(1) motions. *See Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010) ("The Article III case or controversy requirement limits federal courts' subject matter jurisdiction by requiring, *inter alia*, that plaintiffs have standing and that claims be 'ripe' for adjudication.").

A Rule 12(b)(1) jurisdictional attack may be facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "In a facial attack, the challenger asserts that the allegations contained in the complaint are insufficient on their face to invoke federal jurisdiction." *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004) (quoting *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)). In a facial attack on jurisdiction, the nonmoving party is not required to present evidence outside the pleadings; and the allegations of plaintiff's complaint are taken as true. *Id.* As always, the party asserting that a court has subject matter jurisdiction bears the burden of demonstrating as much. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994).

In a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction. *See Safe Air for Everyone*, 373 F.3d at 1039 (citation omitted). The moving party may "convert[] the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court . . . ." *Savage v. Glendale Union High Sch., Dist. No. 205*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003). As a general matter, a district court deciding a factual attack on jurisdiction "need not presume the truthfulness of the plaintiffs' allegations" and may "look beyond the complaint . . . without having to convert the motion into one for summary judgment." *United States ex rel Meyer v. Horizon Health Corp.*, 565 F.3d 1195, 1200 n.2 (9th Cir. 2009) (citation omitted), *overruled on other grounds by United States ex rel. Hartpence v. Kinetic Concepts, Inc.*, 792 F.3d 1121 (9th Cir. 2015).

## III. Discussion

"'The irreducible constitutional minimum of standing contains three elements,' all of which the party invoking federal jurisdiction bears the burden of establishing." *Chandler*, 598 F.3d at 1122 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). The three

elements are: 1) the plaintiff must have suffered an "injury in fact," which is concrete and particularized and actual or imminent; 2) there must be a causal connection between the injury and the conduct complained of – *i.e.*, the injury must be fairly traceable to the action of the defendant; and 3) it must be likely that the injury would be redressed by a favorable decision. *Lujan*, 504 U.S. at 560-61.

Courts take a broad view of constitutional standing in ADA barrier cases. *See Doran v. 7-Eleven*, 524 F.3d 1034, 1040 (9th Cir. 2008). As the Ninth Circuit has made clear:

> Once a disabled individual has encountered or become aware of alleged ADA violations that deter his patronage of or otherwise interfere with his access to a place of public accommodation, he has already suffered an injury in fact traceable to the defendant's conduct and capable of being redressed by the courts, and so he possesses standing under Article III to bring his claim for injunctive relief forward.

*Id.* at 1042 n.5. "[I]f a barrier violating [the ADA Accessibility Guidelines ('ADAAG')] standards relates to a plaintiff's disability, it will impair the plaintiff's full and equal access, which constitutes 'discrimination' under the ADA. That discrimination satisfies the 'injury-in-fact' element of *Lujan*." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 947 (9th Cir. 2011) (en banc).

While encountering an ADAAG violation is sufficient to establish injury-in-fact, "a plaintiff seeking injunctive relief must additionally demonstrate 'a sufficient likelihood that he will again be wronged in a similar way.'" *Id.* at 948 (quoting *City of L.A. v. Lyons*, 461 U.S. 95, 111 (1983)). In other words, the plaintiff must also establish a "real and immediate threat of repeated injury." *Id.* There are two ways to establish a real and immediate threat of repeated injury. *Id.* at 949. A plaintiff may show an intent to return to a noncompliant accommodation, or the plaintiff may show that she is deterred from returning to that accommodation because she has encountered barriers related to her disability there. *Id.*

A. Plaintiff's Burden – Prima Facie or Preponderance of the Evidence

Because Enterprise submitted evidence challenging Plaintiff's standing on a factual basis, the Court "need not presume the truthfulness of the plaintiff's allegations." *Safe Air for Everyone*, 373 F.3d at 1039. Further, because Enterprise "converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, [Plaintiff] must furnish affidavits or other evidence necessary to satisfy its burden of establishing

6

subject matter jurisdiction." *Savage*, 343 F.3d at 1039-40 & n.2 (9th Cir. 2003); *see also Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) ("When the defendant raises a factual attack, the plaintiff must support her jurisdictional allegations with 'competent proof.'").

When a court decides a 12(b)(1) motion to dismiss solely on written materials, *i.e.* without an evidentiary hearing, a plaintiff need only establish a prima facie case of jurisdiction. *Societe de Conditionnement en Aluminium v. Hunter Eng'g Co.*, 655 F.2d 938, 942 (9th Cir. 1981); *see also Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977); *Rancheria v. Bonham*, 872 F. Supp. 2d 964, 968 (N.D. Cal. 2012). However, courts have discretion to order an evidentiary hearing upon either party's request to evaluate the merits of the jurisdictional claims. *Valentin v. Hospital Bella Vista*, 254 F.3d 358, 363 (1st Cir. 2001) (finding that the court "enjoys broad authority to order discovery, consider extrinsic evidence, and hold evidentiary hearings in order to determine its own jurisdiction."); *see also Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987); *Rosales v. U.S.*, 824 F.2d 799, 803 (9th Cir. 1987). When a court holds an evidentiary holding, a plaintiff must establish subject matter jurisdiction by a preponderance of the evidence standard. *Leite*, 649 F.3d at 1121; *see also Rano v. Sipa Press, Inc.*, 987 F.2d 580, 589 n.3 (9th Cir. 1993). At this point, the Court would note that neither party has requested an evidentiary hearing. Therefore, the Court would find the Plaintiff's burden of proof is to make a prima facie showing of jurisdiction based on her evidence.[3]

### B. Purported Factual Inconsistencies

Enterprise argues that purported factual inconsistencies between Plaintiff's allegations in the FAC (and the original Complaint) and her submitted declaration mean that the Court should disregard Plaintiff's evidence. *See* Reply at 4-8. The Court addresses each of Enterprise's purported inconsistencies in order:

First, Enterprise raises credibility concerns about whether or not Plaintiff drives. *See* Reply at 5. Plaintiff states that she is always a passenger in a vehicle, and that Kann rents and drives on her behalf. *See* Opp'n at 7, 11-12. However, in her FAC she alleges that "Plaintiff drives a van that has a handicap placard issued by the state of California." *See* FAC ¶ 1. In fact,

---

[3] Even if a party had requested an evidentiary hearing, the Court is not convinced that a hearing would be necessary or particularly useful. As described below, Plaintiff's purported inconsistencies are either immaterial or not fundamental to a finding of standing. Likewise, even if the Court were to hold Plaintiff to a preponderance of the evidence standard, the Court thinks she would likely meet her burden. As repeated throughout this tentative ruling, and as made clear in the Court's first Tentative Ruling, the threshold questions required to establish standing to challenge a barrier under the ADA are relatively straightforward.

Plaintiff apparently includes this same allegation in 36 other ADA cases she has filed in federal courts since October 2018. *See* Declaration of Julia Sarnoff, Docket No. 28-1, ¶¶ 3-4. While the allegation that Plaintiff "drives" a van could plausibly be read to mean that someone drives her in a van, the apparent inconsistency (or at least vagary) raises other questions. Is Plaintiff's van the vehicle that was totaled? Does she rent a van from Enterprise? Does Kann drive a van? Regardless, whether or not Plaintiff drives a van, is driven in a van, or is driven in other vehicles, the fact remains that she alleges and provides evidence that she has encountered barriers at the La Cienega location and has been deterred from returning. Therefore, the Court would find that any inconsistency about whether Plaintiff drives is largely immaterial.

Second, Enterprise disputes that Plaintiff was actually present at the La Cienega location on March 13 to observe an alleged parking violation. *See* Reply at 6-7. Enterprise presents an employee's declaration stating that only a man was seen visiting the location to take a photograph on that date. *See* Brownbey Decl. ¶¶ 5-8. However, as Enterprise points out, in the FAC Plaintiff alleges that *she* returned to Enterprise, saw a vehicle in accessible parking space, and took a photograph. *See* FAC ¶¶ 24-30. Then, in Plaintiff's declaration she states Kann was with her at the time and that Kann was the actual person who took the photograph of the alleged parking violation. *See* Counter Decl. ¶¶ 25-29. Either way, there is a clear dispute about whether Plaintiff was at the La Cienega location on March 13. Regardless, whether Plaintiff was there on March 13 does not necessarily bear on whether Plaintiff had *ever* visited the La Cienega location.[4] The FAC and Plaintiff's declaration alleges that she has visited the La Cienega locations several other times. This would include the one occasion in August 2018 when Plaintiff squeezed through rental vehicles to find a manager at the location. *See* Counter Decl. ¶ 20. Thus, the Court would conclude that this purported inconsistency about the March 13 visit also fails to discredit Plaintiff's evidence of having visited the La Cienega location. In fact, even if it were only Kann that returned to the La Cienega location, it seems he would have been doing so on Plaintiff's behalf, which by itself offers some indication that Plaintiff and Kann were still interested in the La Cienega (even if only as ADA testers).

Third, Enterprise contests whether Kann actually rented on Plaintiff's behalf because he rented a compact car, as opposed to some larger car, on August 8, 2018. *See* Reply at 7. The

---

[4] The Court does note, however, that if Kann has a car and could drive Plaintiff to the La Cienega store to take pictures, why does Plaintiff rent a car for the other events she attends?

8

Court does not find this argument persuasive because Plaintiff's allegations and declaration do not expressly preclude the use of a compact car so long as it met the appropriate dimensions for her to easily transfer out of her wheelchair. There is also no evidence from Enterprise that a compact car of a certain size and width cannot suit Plaintiff's needs. Further, Enterprise does not mention which cars Kann reserved on the other occasions when he rented from Enterprise.

Lastly, Enterprise alleges that Plaintiff is not credible about her intent to return to the La Cienega location she may have moved, meaning that the La Cienega location would no longer be the most convenient. *See* Reply at 7-8. Enterprise points out that Plaintiff originally asserted that the La Cienega location was "just 1/3rd of a mile from [her] residence," but has subsequently dropped this claim from her FAC. *See* Complaint ¶¶ 23-24; *see generally* FAC. Enterprise also comments that Plaintiff uses the past tense to describe how "[the La Cienega location] *was* close enough to my home that I could travel there alone in my power wheelchair." *See* Counter Decl. ¶ 8 (emphasis added). The Court, however, does not believe this is an inconsistency that overcomes Plaintiff's alleged intent to return, particularly when the full context of the statement relates to Plaintiff's ability to visit exclusively by a power wheelchair. Plaintiff can still allege that the La Cienega location is the most convenient without having to be able to get there by a power wheelchair. Moreover, the Court does not see how this dispute discredits Plaintiff's stated intention to return to the store to either rent a vehicle or see if there is ADA compliance.

Based on the foregoing discussion, the Court would conclude that, while Enterprise's purported inconsistencies do raise some questions about Plaintiff's evidence, the inconsistencies are not material to the key jurisdictional facts of this case. As such, the Court would not wholly discredit Plaintiff's evidence, and would find that she has established a prima facie case of standing.

C. <u>Injury-in-Fact and Real and Immediate Threat of Repeated Injury</u>

Enterprise primarily argues that Plaintiff fails to establish standing because: (1) Plaintiff did not suffer a concrete and particularized injury because there is no evidence that she visited the La Cienega location and was injured by the alleged violations; (2) Plaintiff's injury is not actual or imminent because she relies on vague allegations without specific evidence; and (3) Plaintiff does establish a real and immediate threat of repeated injury because her deterrence claims are hypothetical and Enterprise's Policy has addressed the alleged parking violations. *See* Motion. Plaintiff responded as follows: (1) Plaintiff adequately pleaded standing in her FAC, *see*

Opp'n at 10-11;[5] (2) Plaintiff suffered an injury-in-fact because she personally encountered the unlawful parking violations and is deterred from returning, *id.* at 11-14; and (3) Plaintiff demonstrates a real and immediate threat of repeated injury because she is deterred from returning to the La Cienega location. *Id.* at 10-18.

Since Defendant's positions about an actual or imminent injury and threat of repeated injury hinge on the same facts and arguments, the Court will first determine whether Plaintiff alleges an injury-in-fact that is concrete and particularized, and then determine whether that injury is actual or imminent and poses a threat of repeated injury. *Chapman*, 631 F.3d at 948.

*1. Concrete and Particularized Injury*

Enterprise argues that there is no concrete and particularized injury because Plaintiff has not reserved or rented a vehicle from the La Cienega Location, or any other Enterprise location in Southern California, since January 1, 2018. *See* Motion at 5-6. Enterprise further asserts that it has no records or knowledge of any complaints made by Plaintiff. *Id.*

Enterprise also argues that the FAC fails to identify how exactly Plaintiff was injured by the alleged barriers involving the accessible parking spaces. *Id.* at 6. In particular, Enterprise points out that during one of Plaintiff's alleged visits to the La Cienega location that she was able to squeeze by the rental cars in the parking spaces and enter the facility to find a manager. *Id.* They also argue that Plaintiff could have been dropped off at the facility entrance and not need an accessible parking space, assuming she did not drive herself to the La Cienega location. *Id.* at 2.

Plaintiff contends that she suffered an injury-in-fact because she visited the La Cienega location several times and encountered accessible parking violations relating to her disability. *See* Opp'n at 14; *see also* Counter Decl. ¶ 8. As a wheelchair user, Plaintiff states Enterprise stored their rental inventory on accessible parking spaces every time she visited. *See* Counter Decl. ¶¶ 3-4, 18. In August 2018, Plaintiff attempted to speak with a manager at the La Cienega location about a parking violation but was unable to. *Id.* ¶¶ 20-23. On March 13, 2019, Plaintiff

---

[5] Plaintiff argues that she adequately pleaded standing in her FAC. *See id.* In this facial attack on standing, Plaintiff's allegations in her FAC are not presumed true and are therefore not sufficient to meet her burden of establishing jurisdiction. *See e.g., Norkunas v. Wynn Las Vegas, LLC*, 343 F. App'x 269, 270-71 (9th Cir. Aug. 26, 2009) ("Though Plaintiffs may have overcome a factual attack on standing . . . through an affidavit or declaration specifying a definite intent to return, here Plaintiffs submitted no evidence beyond their complaint to the district court....[Therefore,] Plaintiffs did not carry their burden to establish jurisdiction."). Although, unlike in response to the First MTD, Plaintiff now provides her own evidence in the form of a declaration.

claims she visited the La Cienega location with Kann to observe Enterprise continuing to store its rental inventory on the accessible parking spaces. *Id.* ¶ 25. Plaintiff claims these alleged parking violations have deterred her from returning to the La Cienega location until Enterprise is ADA compliant. *Id.* ¶¶ 33; Opp'n at 14.

Considering the broad view of constitutional standing under *Doran*, the Court would find that Plaintiff makes a prima facie showing that she visited the La Cienega location and encountered barriers relating to her disability. *See Doran*, 524 F.3d at 1039 (internal citation and quotation omitted).[6] Plaintiff has submitted a declaration stating that she visited the La Cienega location multiple times, encountered accessibility barriers, and is now deterred from returning. *See* Counter Decl. Plaintiff explains that Kann's name would be the only one to appear in the Enterprise record-keeping system because he rented on Plaintiff's behalf. Further, Enterprise does not directly dispute Plaintiff's visit in August 2018 when she was unable to speak with an Enterprise manager about an alleged parking violation. *See* Motion.

The Court would also find that Plaintiff's evidence shows how these alleged parking violations could result in a concrete and particularized injury to her as a wheelchair user. The fact that Plaintiff could have squeezed between these parked vehicles to enter the Enterprise store, or that she could have been dropped off at the entrance, does not negate Plaintiff's contention that there was an ADAAG violation as alleged. To the contrary, the Court can infer that a wheelchair user who is denied the right to accessible parking spaces can still suffer an injury that is concrete and specific to their disability. Plaintiff could still properly allege a violation particularly when "the difference between compliance and noncompliance. . . with full and equal enjoyment established by the ADA is often a matter of inches." *See Chapman*, 631 F.3d at 946. "[I]t is not necessary. . . that the barrier completely preclude the plaintiff from entering or from using a facility in any way. Rather the barrier need only interfere with the plaintiff's 'full and equal enjoyment.'" *Id.* at 947 (citing *Doran*, 524 F.3d at 1041 n.4). Therefore, the Court would still find that Plaintiff has alleged an ADAAG violation that make her injuries concrete and particularized.

2. *Actual or Imminent Injury and No Real or Immediate Threat of Repeated Injury*

---

[6] In *Doran*, the Ninth Circuit found plaintiff suffered an injury that was "concrete and particularized" because he alleged "he personally suffered discrimination as a result of the barriers in place during his visits to 7-Eleven and that those barriers have deterred him…from patronizing the store." *Doran*, 524, F.3d at 1040. The Court notes that *Doran* also finds that this injury was "actual or imminent" because he had visited the public accommodation before and is currently deterred due to accessibility barriers. *Id.* at 1041.

11

Enterprise makes various but similar arguments about why Plaintiff's alleged injury is not actual or imminent, and why there is no real or immediate threat of repeated injury.

First, Enterprise contends that Plaintiff does not face either an actual or imminent injury, or real threat of repeated injury, because she fails to allege definite and concrete plans to visit the La Cienega location. *See* Motion at 12-13. Instead, Enterprise believes Plaintiff relies on "some day intentions" of returning that are too vague to establish standing. *Id.*; *see also Feezor v. Sears, Roebuck and Co.*, 608 F. App'x. 476, 477 (9th Cir. 2015) (finding that plaintiff failed to prove an actual or imminent injury because "some day" intentions to return to defendant's location without any specification of when that day may be are insufficient evidence). Similarly, Enterprise further argues that Plaintiff's deterrence claim as a whole is conjectural or hypothetical. *See* Reply at 11-12; *Doran*, 524 F.3d at 1039; *see also Vogel v. Sym Properties, LLC*, 2017 WL 4586348, at *2-3 (C.D. Cal Aug. 4, 2017) (finding that plaintiff lacked standing because he failed to assert facts that established his deterrence was not merely hypothetical). Enterprise contends Plaintiff fails to give reasons why she would want or need to rent a vehicle more than a year after her February 2018 accident. *See* Motion at 7.

Plaintiff's burden on establishing such intent to return is not high. *See Doran*, 524 F.3d at 1040-41 (noting that it was enough to establish standing for plaintiff to state that he intended to return to the neighborhood of the accommodation at least once a year on annual trips and that he would like to visit the accommodation). Based on the evidence, the Court would find Plaintiff alleges that she has been deterred from returning to the La Cienega location to satisfy both the actual or imminent injury and threat of repeated injury standing prongs. *See* Opp'n at 14. For one, Plaintiff intends to rent vehicles in the future and would want to rent from the La Cienega location due to convenience. *See* Counter Decl. at ¶ 9, 31-33. The Court recognizes Plaintiff's history of having Kann rent on her behalf from Enterprise for various events and activities. *Id.* ¶¶ 13-17. The fact that Kann made the car rental reservations on her behalf does not negate her intent to return to the La Cienega location. She is a wheelchair user who needs an access aisle to easily enter a vehicle and claims frustration over the alleged parking violations. *Id.* ¶ 7, 31. Due to Enterprise's alleged parking violations, Plaintiff claims she is deterred from returning because she wants the "ability to safely and independently park and access the Enterprise." *Id.* ¶ 32-33.

Enterprise heavily relies on *Feezor*, but that case is distinguishable from the circumstances here. In *Feezor*, the plaintiff lived more than 200 miles from the defendant's

store, visited the store once without returning, and gave no definitive reason for visiting in the future. *See Feezor,* 608 F. App'x. at 477; *Feezor v. Sears, Roebuck and Co.*, 2012 WL 4510950, at *1 (E.D. Cal. Sept. 30, 2012). In contrast, Plaintiff here claims she regularly passed by the La Cienega location, visited on multiple occasions, and has laid out specific circumstances when she would rent a vehicle in the future. *See* Counter Decl. ¶¶ 6, 9. Instead, this case is more like *Doran*, in that Plaintiff lays out why she intends to return to the La Cienega location. *Doran*, 524 F.3d at 1040-41. Specifically, Plaintiff submits evidence that Kann rented vehicles on her behalf at other Enterprise locations because of the alleged parking barriers. *See* Counter Decl. ¶¶ 10, 13-17 (describing the dates that Kann rented the car and the purposes for which Plaintiff required the cars). Thus, Plaintiff establishes that she has a reason to rent cars multiple times a year. Further, she declares – under penalty of perjury – that the La Cienega location "would be the most convenient location from which to do so." *Id.* ¶¶ 31, 35. The Court would find this evidence sufficient to establish that the alleged barriers have deterred Plaintiff from returning to the La Cienega location.

Nonetheless, Enterprise asserts various other challenges to Plaintiff's standing that the Court will address in turn. First, Enterprise disputes that Kann rented on Plaintiff's behalf since he did not list Plaintiff as a second driver on any of his reservations. *Id.* at 13-14. Likewise, Enterprise asserts that Kann rented a compact car on August 8, 2018, which the company proffers would not meet the "height and width dimensions Plaintiff allegedly requires to transfer from her wheelchair into [a] vehicle." *See* Reply at 7.

The Court, however, does not believe that Kann's reservations failing to list Plaintiff as a second driver matters since Plaintiff clearly states that she relies on him to rent the cars and drive on her behalf. *See* Counter Decl. ¶¶ 11-12. As for the rental of a compact car on August 8, 2018, the Court does not find this persuasive for the reasons stated above. *See supra* at 8-9.

Enterprise then argues that Plaintiff's failure to provide her current address and most recent statement suggests that she no longer lives near the La Cienega location. *Id.* at 8. In addition to alleged credibility issues, Enterprise claims this should then undercut any credibility to her claims for wanting to return to the La Cienega location. *Id.*

But the Court would find that Plaintiff's statements, including her declaration, still allege that the La Cienega location is the most convenient and she has a desire to return. *Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133 (9th Cir. 2002) is representative. In *Pickern*, plaintiff

13

lived about 70 miles from defendant's grocery store, but stated he frequently visited the area to see his grandmother and would prefer to shop there. *Id.* at 1135. Due to the accessibility barriers at defendant's store, the plaintiff declared he was deterred and would shop there if it were made accessible. *Id.* at 1138. Thus, the Ninth Circuit found there was an actual or imminent injury based on Plaintiff's alleged intent to return if it were not for the barriers. *Id.* Similar to *Pickern*, Plaintiff claims she regularly passed by the location and would want to return to rent from that location once the barriers are removed. *See* Counter Decl. ¶ 9. And even if Plaintiff did change residences, she still declares that the La Cienega location is the most convenient Enterprise store for her. *Id.* ¶ 31.

Moreover, Plaintiff could establish an intent to return simply based on passing by the La Cienega location to check for ADA compliance. *See Civ. Rights Educ. & Enf't Ctr. v. Hosp. Properties Tr.*, 867 F.3d 1093, 1102 (9th Cir. 2017) ("*CREEC*"). In *CREEC*, plaintiffs were wheelchair users who complained about the lack of free shuttle services to defendant's hotel for mobility-impaired people. *Id.* at 1097. The defendant argued that plaintiffs did not have standing because their motivation for visiting the hotel was simply to test ADA compliance. *Id.* at 1099. The Ninth Circuit found that "motivation is irrelevant to the question of standing under Title III of the ADA," and that there is still an injury when a plaintiff becomes aware of discriminatory conditions and are deterred from visiting. *Id.* at 1101-02; *see Chapman*, 631 F.3d at 947. Similar to *CREEC*, Plaintiff asserts that she has a right to full and equal access regardless of whether her motivation to visit the La Cienega location was to rent a vehicle or see if there is ADA compliance.

Enterprise argues that *CREEC* is "easily distinguishable" because that case did not involve a factual attack on plaintiff's standing. *See* Reply at 12. But Enterprise's argument fails. First, Enterprise provides no authorities for its position that the factual vs. facial attack distinction matters here. Whether motivation is relevant to the standing question does not turn on whether it is an alleged motivation or a factual motivation. As such, the Court would find that even if Plaintiff only intended to return to the La Cienega location as an ADA tester, this alone would not deprive her of standing.

Lastly, Enterprise contends that the newly-implemented and circulated Policy, which purports to resolve the accessible parking issue, means that Plaintiff does not face a future "real and immediate threat of repeated injury." *See* Motion at 15. Despite this argument, the Court is

14

not persuaded that this defeats Plaintiff's arguments about a real and immediate repeated injury existing based on deterrence. Defendant's Motion is based on a standing argument, not mootness. The Motion does use the latter term a few times in parenthetical discussions of the holdings of two cases (see Docket No. 23-1 at pages 21 & 24 of 25); and the Plaintiff does note in his Opposition that the Defendant bears a "formidable burden of establishing mootness." See Docket No. 27 at pages 24-25 of 31. However, as the Defendant's Reply makes abundantly clear, the facts and discussions in the Motion were not "introduced by Defendant to establish mootness. Accordingly, Plaintiff's arguments concerning the mootness doctrine miss the mark." See Docket No. 28 at page 6 of 18.

Because Defendant has not directly raised the mootness issue directly, the Court will not address it herein. As stated in its Tentative Ruling, the Court views Defendant's voluntary policy issuance as more of a mootness issue than a standing issue. *See* Tentative Ruling at 7; *see also Oliver v. Ralph's Grocery Co.*, 654 F.3d 903, 905 (9th Cir. 2011) ("Because a private plaintiff can sue only for injunctive relief (*i.e.*, for removal of the barrier) under the ADA, . . . a defendant's voluntary removal of alleged barriers prior to trial can have the effect of mooting a plaintiff's ADA claim."); *Vogel v. Winchell's Donut Houses Operating Co.*, 252 F. Supp. 3d 977, 985 (C.D. Cal. 2017). Moreover, any considerations about the effectiveness of the Policy would go to the merits of Plaintiff's case, which this Court has already stated in its Tentative Ruling that it does not need to consider when evaluating the jurisdictional facts for standing.[7]

In sum, the Court recognizes that courts have taken a broad view of constitutional standing in ADA barrier cases. Because Plaintiff's evidence shows that she is being deterred from returning to the allegedly noncompliant accommodation, Plaintiff has met her burden of establishing standing.

**IV. Conclusion**

Based on the foregoing discussion, the Court would **DENY** Enterprise's motion to dismiss pursuant to FRCP 12(b)(1).

---

[7] Plaintiff continues to argue that the Court should not consider Enterprise's evidence at this stage because the jurisdictional facts are intertwined with the merits of the ADA claim. *See* Opp'n at 1,8. Plaintiff, however, still does not sufficiently develop this argument when the Court has previously explained that the "boiled-down jurisdictional facts" include whether Plaintiff visited the La Cienega location and whether she intends to return in the future. *See* Tentative Ruling at 6. Determining these specific facts would not require the Court at this point to inquire into whether Enterprise's alleged parking practices actually constitute a violation of the ADAAG or represent a barrier to full and equal access to the premises.